FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEANNA T., | NO: 2:21-CV-145-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Deanna T.[1] ECF No. 15, and Defendant the

Commissioner of Social Security (the "Commissioner"), ECF No. 17.  Plaintiff

seeks judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of

the Commissioner's denial of her claim for Social Security Disability Insurance

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").  *See* ECF No. 15 at 1.

Having considered the parties' motions, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants summary judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff was born in 1970 and applied for DIB and SSI on approximately April 20, 2018, alleging disability beginning on July 1, 2016, with a date last insured of June 30, 2019.  Administrative Record ("AR")[2] 20, 22, 271–78.  Plaintiff asserts that she cannot work due to shoulder impairments, liver disease, fibromyalgia, bilateral carpal tunnel syndrome, left hand trigger finger, and chronic fatigue syndrome.  *See* AR 50–52, 359; *see also* ECF No. 15 at 2.  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 20.

On September 23, 2020, Plaintiff appeared at a hearing, represented by attorney Chad Hatfield, before Administrative Law Judge ("ALJ") George Gaffaney in Chicago, Illinois.  AR 45–47.  Due to the exigencies of the COVID-19 pandemic,

---

[2] The AR is filed at ECF No. 10.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff and her counsel appeared telephonically.  AR 47.  The ALJ also heard

telephonically from vocational expert Kari Seaver-Reid.  AR 73–79.  Plaintiff and

Ms. Seaver-Reid responded to questions from ALJ Gaffaney and counsel.  AR 52–

79.

Plaintiff reported that she lives with her mother and last worked, as a cashier,

in December 2017.  AR 54.  Plaintiff testified that she was "let go" from that job and

was told that she "wasn't up to where they wanted [her] to be at with training,"

explaining that she is "more of a hands-on learner" who catches on to new tasks by

sitting down and doing them.  AR 54.  Through counsel, Plaintiff asserted that she is

unable to work primarily due to an inability to use her right, dominant arm.  *See* AR

50, 359.  In response to counsel's questions, Plaintiff testified that shoulder pain and

repeated dislocation of the joint interfered with her ability to work from 2015

through 2018, and she had to wear a sling to support her right arm.  AR 55–56.

Plaintiff underwent shoulder surgery in March 2018, but Plaintiff asserts that the

surgery was not successful in relieving her pain.  AR 57–58.  Plaintiff stated that she

also suffers from pain and numbness in both hands.  AR 59.  Plaintiff also testified

to problems staying awake during the day, despite sleeping twelve hours at night.

AR 60–61.  Plaintiff testified that her sleep is disturbed by shoulder pain, although

Plaintiff stated that the methadone that she takes for pain relief works.  AR 61–62.

Plaintiff does not take opioids for pain relief because she was "kicked out of" a pain

management clinic for testing positive for methamphetamine, which Plaintiff claims she last used in November 2018. AR 62. Plaintiff further testified to having three blood transfusions and needing hospitalization due to fatigue associated with her anemia. AR 64–65. Plaintiff stated that she had required a walker since July 2020, had used a borrowed walker prior to that, and must elevate her legs and take blood thinners to address edema. AR 66–67. Plaintiff testified that she had recently experienced unintended weight loss due to her "organs shutting down; the liver and the kidneys." AR 67. Plaintiff stated that approximately forty percent of the time, she cannot motivate herself to leave her house and cancels appointments scheduled for those days. AR 68. Plaintiff stated that she can dress and groom herself. AR 68. Plaintiff helps her mother do laundry and household chores. AR 69–70. Plaintiff reported having a driver's license, but further reported that due to changes to her eyesight in the three months prior to the hearing, she had not driven during that period. AR 68–69.

### ALJ's Decision

On October 28, 2020, ALJ Gaffaney issued an unfavorable decision. AR 20–34. Applying the five-step evaluation process, ALJ Gaffaney found:

**Step one:** Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2019, and Plaintiff has not engaged in substantial gainful activity since July 1, 2016, the alleged onset date. AR 22.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: right shoulder osteoarthritis, status-post arthroscopy; fibromyalgia; chronic fatigue syndrome; and bilateral carpal tunnel syndrome and right trigger finger, status-post surgeries, under 20 C.F.R. §§ 404.1520(c) and 416.920(c).  AR 23.  The ALJ further found that "obesity, hypothyroidism, iron deficiency, macrocytic, and megaloblastic anemia, restless leg syndrome, colitis/diverticula of the colon, methamphetamine abuse in remission, neuropathy, hypoglycemia, hypocalcemia, alcoholic cirrhosis, hepatitis A, B, and C, migraines, hernias, status-post surgeries, deep vein thrombosis of the left lower extremity, bilateral plantar fascial pain, and all other impairments alleged and found in the record, besides those listed above are nonsevere as they are responsive to offered treatment, cause no more than minimal vocationally relevant limitations, did not last or are not expected to last for a continuous period of 12 months, are not expected to result in death, or are not properly diagnosed by an acceptable medical source."  AR 23.  The ALJ went on to briefly consider each of the enumerated impairments and cite to portions of the record that the ALJ considered dispositive.  AR 23–24.  ALJ Gaffaney also considered whether Plaintiff's "medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  AR 25.  As part of ALJ

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    Gaffaney's consideration, he found that Plaintiff does not meet the "paragraph B"

2    criteria of having at least one extreme or two marked limitations in a broad area of

3    functioning to meet any mental impairment listing.  AR 25–26.

4         **Step three:** The ALJ concluded that Plaintiff does not have an impairment or

5    combination of impairments that meets or medically equals the severity of one of the

6    listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

7    404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 26.  The

8    ALJ considered and discussed listing 1.02 (major dysfunction of a joint), 5.05

9    (chronic liver disease), 7.05 (hemolytic anemias), 11.14 (peripheral neuropathy),

10   14.09 (inflammatory arthritis), and section 11.00 (neurological impairments) in light

11   of Plaintiff's carpel tunnel syndrome.  AR 26–27.  The ALJ also "considered the

12   possibility of fibromyalgia medically equaling a listing and as an aggravating factor

13   to other severe impairments, that in combination would meet or equal a listing," but

14   found that "the evidence of record does not indicate that the claimant's fibromyalgia

15   causes symptoms that would equal one of the listings or contributes to any other

16   severe impairment in causing that impairment to meet or medically equal the

17   requirements of any of the listed impairments."  AR 28.  Similarly, the ALJ

18   considered "the possibility of chronic fatigue syndrome ('CFS') medically equaling

19   a listing and as an aggravating factor to other severe impairments, that in

20   combination would meet a listing."  AR 28.  ALJ Gaffaney found that "the evidence

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

of record does not indicate that the claimant's chronic fatigue syndrome causes symptoms that would equal one of the listings or contributes to any other severe impairment in causing that impairment to meet or medically equal the requirements of any of the listed impairments." AR 28.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to: perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb stairs, stoop, balance, kneel, crouch, and crawl. The ALJ further included in Plaintiff's RFC that: she can never climb ladders; she can perform frequent bilateral handling and fingering; she can never perform overhead reaching with the right upper extremity; and she can have occasional exposure to vibrations." AR 28.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed. AR 29.

**Step four:** The ALJ found that Plaintiff has past relevant work as a cashier. AR 33. The ALJ relied on the VE's testimony to find that Plaintiff can perform her past relevant work, as generally performed in the national economy and as actually performed by Plaintiff according to her testimony. AR 33.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

1     **Step five:** The ALJ concluded that Plaintiff has not been disabled within the

2    meaning of the Social Security Act from July 1, 2016, through the date of the ALJ's

3    decision.  AR 33.

4     The Appeals Council denied review.  AR 1–6.

5    **LEGAL STANDARD**

6    ***Standard of Review***

7     Congress has provided a limited scope of judicial review of the

8    Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

9    Commissioner's denial of benefits only if the ALJ's determination was based on

10   legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

11   993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

12   determination that a claimant is not disabled will be upheld if the findings of fact are

13   supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

14   1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

15   scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

16   1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

17   1989).  Substantial evidence "means such evidence as a reasonable mind might

18   accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

19   401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

20   [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

21

1    *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

2    record as a whole, not just the evidence supporting the decisions of the

3    Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

4        A decision supported by substantial evidence still will be set aside if the

5    proper legal standards were not applied in weighing the evidence and making a

6    decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

7    1988).  Thus, if there is substantial evidence to support the administrative findings,

8    or if there is conflicting evidence that will support a finding of either disability or

9    nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

10   812 F.2d 1226, 1229–30 (9th Cir. 1987).

11       ***Definition of Disability***

12       The Social Security Act defines "disability" as the "inability to engage in any

13   substantial gainful activity by reason of any medically determinable physical or

14   mental impairment which can be expected to result in death or which has lasted or

15   can be expected to last for a continuous period of not less than 12 months."  42

16   U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined

17   to be under a disability only if her impairments are of such severity that the claimant

18   is not only unable to do her previous work, but cannot, considering the claimant's

19   age, education, and work experiences, engage in any other substantial gainful work

20   which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A). Thus, the

21

definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1.      Did the ALJ erroneously omit severe impairments at step two?

2.      Did the ALJ erroneously find that Plaintiff's fibromyalgia does not meet or equal a listed impairment at step three?

3.      Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?

4.      Did the ALJ erroneously assess the medical opinion evidence?

***Step Two***

Plaintiff argues that the ALJ erred at step two of the sequential analysis by overlooking Plaintiff's anemia, deep vein thrombosis, cirrhosis, hypoglycemia, hypocalcemia, and hypothyroidism.  ECF No. 15 at 14–15.  Plaintiff asserts that she has been limited in her ability to work and has "suffered frequent hospitalizations due to complications associated with these impairments" since at least February 2019, six months before the alleged onset date.  *Id.*

The Commissioner responds that step two serves "'merely [as] a threshold determination meant to screen out weak claims,' and is '*not* meant to identify the impairments that should be taken into account when determining the RFC.'"  ECF No. 17 at 2–3 (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (emphasis added by Commissioner)).  The Commissioner argues that no prejudice

1   could have resulted from the ALJ's treatment of certain of Plaintiff's impairments at

2   Step Two because the ALJ found that Plaintiff had multiple severe impairments and

3   proceeded to discuss all of Plaintiff's alleged limitations in assessing her RFC.  *Id.*

4        Plaintiff replies that the "Commissioner fails to offer any cogent response,

5   arguably conceding harmful legal error."  ECF No. 19 at 7 (citing ECF No. 17 at 2–

6   3).

7        At step two, an ALJ may find impairments or combinations of impairments to

8   be non-severe "if the evidence establishes a slight abnormality that has no more than

9   a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d

10  683, 686 (9th Cir. 2005); *see also* Social Security Ruling (SSR) 85-28, 1985 SSR

11  LEXIS 19, 1985 WL 56856, at *3.  Omissions at step two are harmless error if step

12  two is decided in the claimant's favor and the ALJ incorporates all of the claimant's

13  limitations into the RFC.  *Burch v. Barnhart*, 400 F.3d 676, 682–84 (9th Cir. 2005).

14       Plaintiff characterizes the ALJ's rejection of several of Plaintiff's alleged

15  impairments as "inexplicabl[e.]"  ECF No. 19 at 7.  However, the ALJ's decision

16  contains a thorough discussion of each impairment and citations to Plaintiff's

17  medical record for support that anemia, deep vein thrombosis, cirrhosis,

18  hypoglycemia, hypocalcemia, and hypothyroidism amount to no more than a slight

19  abnormality that has no more than a minimal effect on Plaintiff's ability to work.

20  AR 23–25.  Plaintiff does not challenge this discussion.  ECF Nos. 15 at 14–15; 19

21

at 7.  Because the ALJ provided substantial evidence to find the specified

impairments non-severe and evaluated Plaintiff's full range of impairment in

formulating the RFC, any error in finding particular impairments not severe was

harmless.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017)

(concluding that any step two error was harmless and stating that the RFC "should

be exactly the same regardless of whether certain impairments are considered

'severe' or not"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding

step two error was harmless because the ALJ discussed the impairment during later

steps).

   The Court finds no basis to disturb the Commissioner's decision based on the

ALJ's Step Two analysis.  Accordingly, the Court denies Plaintiff's Motion for

Summary Judgment, and grants the Commissioner's Motion for Summary

Judgment, regarding this issue.

### Step Three

   Plaintiff argues that the ALJ failed to consider listing 14.09D "in accordance

with SSR 12-2" regarding whether Plaintiff's fibromyalgia equaled another

impairment.   ECF No. 19 at 7−8.  Plaintiff elaborates that "[a]t the very least, the

ALJ's conclusory findings prevent this Court from determining that his decision was

supported by substantial evidence, requiring remand." *Id.* at 9.  "However, when the

evidence is considered in [sic] first instance—including the improperly rejected

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

medical opinions—[Plaintiff] is determined disabled pursuant [sic], warranting payment of benefits." *Id.*

The Commissioner responds that Plaintiff does not satisfy her obligation of citing specific evidence supporting that she meets or medically equals any listing. ECF No. 17 at 11–12.

The ALJ found that fibromyalgia is a severe impairment for Plaintiff at step two, but found at step three that "the evidence of record does not indicate that the claimant's fibromyalgia causes symptoms that would equal one of the listings or contributes to any other severe impairment in causing that impairment to meet or medically equal the requirements of any of the listed impairments." AR 28.

A claimant must present evidence to establish that an impairment meets or is equal in severity and duration to the characteristics of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An ALJ is not required to compare the effects of a claimant's impairment(s) to any listing unless a claimant presents evidence in an effort to establish equivalence. *Burch*, 400 F.3d at 683.

Social Security Ruling ("SSR") 12-2p, 2012 SSR LEXIS 1 establishes guidelines for evaluating fibromyalgia in disability claims. SSR 12-2p mentions listing 14.09D, the listing for inflammatory arthritis, as one listing that fibromyalgia may medically equal. SSR 12-p, 2012 SSR LEXIS 1, at *2. However, the ruling explains that the inquiry at step three entails examining whether the effects of the

claimant's fibromyalgia, either individually or in combination with a claimant's other impairments, "medically equals a listing." SSR 12-2p, 2012 SSR LEXIS 1 at *19–20.  SSR 12-2 does not displace a claimant's burden at step three, and "a mere diagnosis does not establish disability."  *Criselda D. v. Kijakazi*, No. 4:20-cv-5239-EFS, 2022 U.S. Dist. LEXIS 29854, at *28 (E.D. Wash. Feb. 18, 2022) (citing *Bowen*, 482 U.S. at 146 n. 5; *Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir. 1985); 20 C.F.R. §§ 404.1525(d), 416.925(d)).  Plaintiff does not maintain that she presented specific evidence at her administrative hearing to establish equivalence with listing 14.09D.  Likewise, Plaintiff does not demonstrate in the present briefing how her impairments meet or equal listing 14.09D.  Therefore, the Court does not find error on this basis and grants summary judgment to the Commissioner, and denies summary judgment to Plaintiff, on this issue.

### Subjective Symptom Testimony

Plaintiff argues that the ALJ did not provide clear and convincing reasons for making a negative credibility finding because he "did little more than assert that claimant's symptom testimony was unsupported by the objective evidence and treatment records, contrary to law."  ECF No. 15 at 17–18 (citing AR 29–31).  Plaintiff argues that, as a general rule, the ALJ may not discount a claimant's subjective complaints merely because they are not substantiated by objective medical evidence, and that is "particularly true" for impairments such as chronic

1    fatigue syndrome and fibromyalgia. *Id.* at 18 (citing *Robbins v. Soc. Sec. Admin.*,

2    466 F.3d 880 (9th Cir. 2006); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.

3    2003); *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004); *see also Coleman v.*

4    *Astrue*, No. 10-35286, 2011 WL 1058448, at *1 (9th Cir. 2011); *Rollins v.*

5    *Massanari*, 261 F.3d 853, 855 (9th Cir. 2001).

6        The Commissioner responds that a contradiction between a claimant's

7    testimony and her medical record is a sufficient basis for rejecting subjective

8    testimony. ECF No. 17 at 4 (citing *Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155,

9    1161 (9th Cir. 2008)). The Commissioner maintains that there was substantial

10   evidence that satisfies the Ninth Circuit's clear and convincing reason standard, that

11   Plaintiff's physical examinations do not substantiate Plaintiff's complaints, and that

12   Plaintiff's reports to treatment providers were not consistent with her hearing

13   testimony. *Id.* (citing AR 58, 64, 64–65, 295, 394, 401, 516, 540, 866, 919, 961,

14   1136, 1140, 1143, 1146, and 1939).

15       To reject a claimant's subjective complaints, the ALJ must provide "specific,

16   cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)

17   (internal citation omitted). The ALJ "must identify what testimony is not credible

18   and what evidence undermines the claimant's complaints." *Id.* Subjective symptom

19   evaluation is "not an examination of an individual's character," and an ALJ must

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

consider all of the evidence in an individual's record when evaluating the intensity

and persistence of symptoms.  *See* SSR 16-3p, 2016 SSR LEXIS 4 (2016).

In deciding whether to accept a claimant's subjective pain or symptom

testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so."  *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this matter.  The ALJ summarized

Plaintiff's hearing testimony and found that Plaintiff's medically determinable

impairments reasonably could be expected to cause the alleged symptoms.  AR 29.

Toward that end, ALJ Gaffaney found that records support that, within the relevant

period, Plaintiff had: presented with twelve of eighteen fibromyalgia points that

were positive upon examination; complained of right arm and shoulder pain, and

pain in both wrists; undergone surgery on her right shoulder; displayed a limited

range of motion of the right upper extremity; reported taking methadone for

generalized and severe chronic knee, hand, and back pain; established a diagnosis of

chronic fatigue syndrome, and shown a July 2020 admission to the hospital with

complaints of weakness.  AR 30 (citing AR 464, 493–94, 540, 568, 629, 865, 1146,

and 1157).  Accordingly, the ALJ determined that the totality of Plaintiff's

symptoms warranted a limitation to light work with some postural and

environmental limitations.  AR 30.  The ALJ expanded: "Due to the pain and

paresthesias that she experienced in her bilateral hands/wrists, the residual functional

capacity further includes that she is limited to frequent bilateral handling and

fingering. Moreover, due [sic] the pain in her right shoulder, she can never perform

overhead reaching with the right upper extremity."  AR 30.

However, ALJ Gaffaney found that Plaintiff's statements about the intensity,

persistence, and limiting effects of Plaintiff's symptoms were not consistent with

medical and other evidence in the record, and the record as a whole does not support

additional limitations.  AR 30.  Specifically, ALJ Gaffaney found that from the July

2016 alleged onset date onward, Plaintiff's medical records indicate:

> [I]n October of 2016, her extremities had full range of motion, no
> deformities, and no edema. In March of 2017, the claimant was
> negative for back pain and joint pain. Upon examination, her
> extremities had no swelling or redness, she had no gross motor/sensory
> deficits, and she was moving all extremities.  In October of 2017, the
> claimant was healthy-appearing, in no acute distress, and she ambulated
> normally. In November of 2018, the claimant was negative for myalgias
> and arthralgias. Upon examination, she had no deformity in the upper
> and lower extremities with full active range of motion, and a normal
> gait and stance. In December of 2018, examination showed that the

claimant was in no apparent distress, her back had a normal inspection with no vertebral tenderness, no CVA tenderness, and normal range of motion. Her extremities were normal with no evidence of injury, normal range of motion, no tenderness, no edema, and normal capillary refill.

Moreover, in July of 2019, the claimant's gait and station were normal, her cranial nerves were grossly intact, her sensation was grossly intact, and her ambulation had no limitations. In May and November of 2019, upon examination, the claimant was alert, in no acute distress, well nourished, and comfortable. Her extremities had normal ranges of motion, no joint swelling, no clubbing, and no cyanosis, and she had no edema, and peripheral pulses were normal and equal in all extremities. In October and December of 2019, and July and August of 2020, examination showed that she had normal strength and tone of the upper and lower extremities, and normal range of motion of the upper and lower extremities with no tenderness. In October and December of 2019, and July of 2020, examination of her ambulation revealed no limitations. Though the claimant was ambulating with a walker in August of 2020, there is no indication in the record that the claimant used a walker regularly. Indeed, a note from August 2, 2020[,] indicated that her walker was "new[.]" Moreover, in September of 2020, Khaldoun Alnabelsi, M.D. made no mention of the claimant using a walker. As recently as September of 2020, the claimant did not have fatigue and she had no muscle pain and no numbness sensation of the extremities.

AR 30 (citing AR 394–95, 401, 516, 539, 866, 919, 961, 1130, 1136, 1140, 1143, 1146, 1315, 1939).

As demonstrated in the quoted excerpt, the ALJ reviewed Plaintiff's records from throughout the relevant time period, including after her shoulder surgery, and found that the record supported Plaintiff's assertion that she is physically limited in her ability to work, but does not support the degree of limitation that Plaintiff asserts. Plaintiff stated during her hearing that her shoulder is "always in a lot of

1  pain," which inhibits her ability to do tasks including washing dishes for more than

2  five or ten minutes; she experiences numbness in her hands; she suffers from severe

3  fatigue and tiredness throughout the day requiring her to recline after being upright

4  for only fifteen minutes, and she requires a walker.  AR 58–59, 64–65.  However,

5  medical visit notes from 2019 and 2020 reflect that Plaintiff was ambulating without

6  limitations, exhibited normal strength, tone, and range of motion in her lower and

7  upper extremities, and reported not being in pain at the appointment.  AR 1136,

8  1140, 1143, 1154–57, 1160, and 1939.

9       Having reviewed the records cited by the ALJ, the ALJ's characterization of

10  the objective medical record as conflicting with the level of impairment that Plaintiff

11  claimed in her testimony is supported by substantial evidence.  *See Tommasetti v.*

12  *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by

13  substantial evidence, the court 'may not engage in second-guessing.'") (quoting

14  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Saavedra v.*

15  *Berryhill*, 2019 U.S. Dist. LEXIS 40872, 2019 WL 1171271, at *4 (C.D. Cal. Mar.

16  12, 2019) ("[T]his Court will not second guess the ALJ's reasonable determination .

17  . . even if the evidence could give rise to inferences more favorable to plaintiff.").

18  Although an ALJ may not solely rely on the lack of objective medical evidence to

19  discount a plaintiff's subjective complaints, an ALJ may consider whether objective

20  evidence supports the degree of a plaintiff's alleged symptoms and limitations

21

1    alongside other considerations.  *See Burch*, 400 F.3d at 681.  Moreover, an ALJ may

2    rely on a contradiction between a claimant's subjective complaints and specific

3    medical evidence as a distinct basis for discounting the claimant's subjective

4    symptom allegations.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161

5    (9th Cir. 2008).  Consequently, the Court finds no error on this ground, and,

6    therefore, denies Plaintiff's Motion for Summary Judgment and grants the

7    Commissioner's Motion on this basis.

8    ### *Medical Source Opinions*

9    Plaintiff challenges the ALJ's treatment of the opinions of two medical

10   sources, treating physicians Joshua Napial, DO and Miguel A. Schmitz, MD.  ECF

11   Nos. 15 at 9–14; 19 at 2–6.  The Commissioner counters that the ALJ reasonably

12   assessed the persuasiveness of the medical opinions based on their supportability

13   and consistency with the record.  ECF No. 17 at 5.

14   The regulations that took effect on March 27, 2017, provide a new framework

15   for the ALJ's consideration of medical opinion evidence and require the ALJ to

16   articulate how persuasive he finds all medical opinions in the record, without any

17   hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

18   Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

19   2017).  Instead, for each source of a medical opinion, the ALJ must consider several

20   factors, including supportability, consistency, the source's relationship with the

21

claimant, any specialization of the source, and other factors such as the source's

familiarity with other evidence in the claim or an understanding of Social Security's

disability program.  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the "most important" factors, and the ALJ

must articulate how he considered those factors in determining the persuasiveness of

each medical opinion or prior administrative medical finding.  20 C.F.R. §

416.920c(b)(2).  With respect to these two factors, the regulations provide that an

opinion is more persuasive in relation to how "relevant the objective medical

evidence and supporting explanations presented" and how "consistent" with

evidence from other sources the medical opinion is.  20 C.F.R. § 416.920c(c)(1).

The ALJ may explain how he considered the other factors, but is not required to do

so, except in cases where two or more opinions are equally well-supported and

consistent with the record.  20 C.F.R. § 416.920c(b)(2), (3).  Courts also must

continue to consider whether the ALJ's finding is supported by substantial evidence.

*See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive . . . .").

Prior to issuance of the new regulations, the Ninth Circuit required an ALJ to

provide clear and convincing reasons to reject an uncontradicted treating or

examining physician's opinion and provide specific and legitimate reasons where the

record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

(9th Cir. 2017). Recently, the Ninth Circuit held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22, 2022). The Ninth Circuit continued that the "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations." *Id*. at *15 (internal citation omitted).

Accordingly, as Plaintiff's claim was filed after the new regulations took effect, the Court refers to the standard and considerations set forth by the revised rules for evaluating medical evidence. *See* AR 20.

### Joshua Napial, DO

Plaintiff argues that the ALJ erred in rejecting Dr. Napial's disabling opinion based on "a handful of notes showing full range of motion and normal gait over the course of three years" because "Dr. Napial's opinion was not based on musculoskeletal or exertional limitations." ECF No. 19 at 3.[3]

---

[3] In what appears to be a scrivener's error, Plaintiff refers twice to "Dr. Napier," rather than Dr. Napial. ECF No. 19 at 3. The medical opinion at issue is signed by Joshua D. Napial, DO of Internal Medicine. AR 1938.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1    The Commissioner counters that the ALJ reasonably found unpersuasive Dr.

2    Napial's opinion that Plaintiff would miss four or more days of work per month and

3    would be off task up to thirty percent of the time because the opinion was not

4    consistent with the record.  ECF No. 17 at 8.

5    Dr. Napial completed a form Medical Report provided by Plaintiff's counsel

6    on August 26, 2020.  AR 1936–38.  Dr. Napial indicated that he had been treating

7    Plaintiff since March 18, 2019.  AR 1936.  As best as the Court can decipher from

8    Dr. Napial's handwritten responses, Dr. Napial described Plaintiff's diagnoses as

9    liver cirrhosis, lower extremity deep vein thrombosis, hypoglycemia, hypocalcemia,

10   and hypothyroidism and Plaintiff's symptoms as left lower extremity burning pain

11   worse with prolonged use."  AR 1936.  Dr. Napial opined that, more probably than

12   not, Plaintiff would miss work four days or more on average per month due to

13   "appointments and treatments for symptoms."  AR 1937.  Dr. Napial further opined

14   that Plaintiff could perform no more than light work day-to-day on a sustained,

15   competitive basis.  AR 1937.  Dr. Napial opined that the limitations he referred to in

16   the report had existed since at least July 17, 2020.  AR 1938.

17   The ALJ wrote that he considered Dr. Napial's opinion and found it partially

18   persuasive.  AR 32.  Specifically, the ALJ found persuasive Dr. Napial's opinion

19   that Plaintiff can perform light work, defined similarly to the agency definition as

20   lifting twenty pounds maximum and frequently lifting and/or carrying up to ten

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

pounds, frequently walking or standing, and occasionally pushing and pulling.  AR

32 (citing AR 1937).  The ALJ found this opinion of Dr. Napial's to be generally

consistent with the record.  AR 32.  However, the ALJ found that the portion of Dr.

Napial's report opining that Plaintiff would miss four days of work per month and

would be off-task up to thirty percent of the workday are unpersuasive because the

record "does not support that the claimant is limited to this degree."  AR 32.  The

ALJ cited to records that indicate that: (1) in October 2017, Plaintiff was "healthy-

appearing, in no acute distress, and she ambulated normally" (AR 540); (2) in

December 2018, an examination of Plaintiff showed no apparent distress, no

vertebral tenderness in Plaintiff's back, and a normal range of motion (AR 866); (3)

in May and November 2019, Plaintiff presented upon examination as alert, in no

acute distress, well-nourished, and comfortable (AR 919, 961); and (4) in a

September 2020 examination, Plaintiff did not have fatigue, muscle pain, or

numbness sensation in her extremities (AR 1939).

The records cited by the ALJ in discussing Dr. Napial's opinion are

substantial evidence that undermine the opinion that Plaintiff would be unable to

work four or more days per month and up to thirty percent of the workday and that

address the highest priority factors of supportability and consistency.  For instance,

the September 2020 medical record is from a medical appointment addressing

Plaintiff's endocrine conditions, hypothyroidism and hypoglycemia, two diagnoses

highlighted by Dr. Napial in his report prepared only one month before the medical

appointment.  AR 1939.  The September 2020 appointment note, conducted by

"telehealth" because Plaintiff "declined a visual visit by Zoom Application or by

Smart Phone visual technology," recorded nothing remarkable about Plaintiff's

systems and prescribes only follow-up labs for Plaintiff's thyroid levels and a diet

consisting of three meals, three snacks, high protein, and no concentrated sweets for

Plaintiff's hypoglycemia.  AR 1939.  The records cited by the ALJ undermine Dr.

Napial's opinion that Plaintiff could not work on a consistent basis, and even if it

were this Court's role to reinterpret the record, which it is not, Dr. Napial's report

does not refer to other medical records with which the opinion is consistent.  *See*

*Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the

evidence can reasonably support either affirming or reversing, the reviewing court

'may not substitute its judgment' for that of the Commissioner.") (internal quotation

omitted).  The Court does not find error in ALJ Gaffaney's evaluation of the

persuasiveness of Dr. Napial's opinion.

<u>Miguel A. Schmitz, MD</u>

Plaintiff argues that the ALJ erroneously rejected the disabling opinion of Dr.

Schmitz on the basis that it does not satisfy the 12-month durational requirement

because that requirement is "simply a step two threshold."  Moreover, Plaintiff

argues, "Dr. Schmitz's opinion was authored more than two years since the alleged

onset date, and Ms. Tripodo has suffered right shoulder limitations dating back to 2016." ECF No. 19 at 5. Plaintiff further argues that Dr. Schmitz offered his opinion just weeks after Plaintiff underwent right shoulder surgery "when it was believed she would heal," but that ultimately "was unsuccessful." *Id.* at 6 (citing AR 568−69, 1168−69). Plaintiff maintains that "the durational requirement is easily met when Dr. Schmitz's opinion is considered in context within [sic] the longitudinal record." *Id.*

The Commissioner responds that the ALJ reasonably concluded that the limitations to which Dr. Schmitz opined could not establish disability because Dr. Schmitz identified only temporary limitations. ECF No. 17 at 9−10. The Commissioner continues that the ALJ also reasonably found that Dr. Schmitz's opinion was "not consistent with the evidence over the entire period from July 2016 to the present." AR 31.

On March 26, 2018, Plaintiff's treating physician Dr. Schmitz completed a Documentation Request Form for Medical or Disability Condition for Washington State Department of Social and Health Services for Plaintiff. AR 556−58. Dr. Schmitz opined that because of Plaintiff's "right shoulder multidirectional instability with labrum tear requiring surgical intervention on March 9, 2018," Plaintiff could not use her right, dominant arm, and, therefore, was unable to work, look for work, or prepare for work. AR 556. Dr. Schmitz checked the box affirmatively

responding to the question, "Does this person have any limitations with lifting and carrying?"  AR 557.  He checked the box indicating that Plaintiff is "[s]everely limited: unable to lift at least 2 pounds or unable to stand or walk." AR 557 (with the word "lift" underlined by hand).  Dr. Schmitz opined that Plaintiff's condition with respect to her right shoulder is not permanent and instead would last for six months. AR 557.  Dr. Schmitz described Plaintiff's treatment plan as consisting of physical therapy three times per week for one month, after which Plaintiff would return to Dr. Schmitz for a follow-up visit.  AR 557.

The ALJ found Dr. Schmitz's opinion "not persuasive because it is not helpful in determining the claimant's residual functional capacity."  AR 31.

> In particular, it only applies to a short period of six months, rather than the entire period after the claimant's alleged onset date. Thus, it is not consistent with the evidence over the entire period from July of 2016 to the present.  Indeed, in October of 2017, the claimant was healthy-appearing, in no acute distress, and she ambulated normally. In November of 2018, she had no deformity in the upper and lower extremities with full active range of motion, and a normal gait and stance. In October and December of 2019, and July and August of 2020, examination showed that she had normal strength and tone of the upper and lower extremities, and normal range of motion of the upper and lower extremities with no tenderness. Moreover, this opinion is vague as it indicates that the claimant is unable to lift at least two pounds or unable to stand or walk, but does not specify which of these limitations applies to the claimant.

AR 31–32 (internal citations omitted).

Dr. Schmitz rendered his opinion the same month as Plaintiff's surgery, and his opinion does not address whether the complete inability to work would

apply to Plaintiff's condition after her surgery failed, as Plaintiff alleges.  *See* AR 556–58.  Dr. Schmitz also did not address whether Plaintiff's alleged complete inability to work, look for work, or prepare for work due to her shoulder impairment predated March 2018.  *See* AR 556–58.  The ALJ reasonably found that the explicitly temporary nature of Dr. Schmitz's opinion detracted from its utility.  The ALJ's evaluation of Dr. Schmitz's opinion as vague also is supported by substantial evidence.  *See* AR 557.  The ALJ's treatment of Dr. Schmitz's opinion adheres to the framework prescribed by 20 C.F.R. § 416.920c(c)(1)-(5).

The Court finds no error in the ALJ's treatment of the challenged medical source opinions.  Therefore, the Court denies Plaintiff's Motion for Summary Judgment with respect to this final issue and grants summary judgment to the Commissioner regarding the same.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is

    **GRANTED**.

3.   Judgment shall be entered for Defendant.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order, enter judgment as directed, provide copies to counsel, and **close this case**.

**DATED** August 4, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge